**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MIGUEL ZEPEDA,

     Plaintiff,

v.                                    CASE NO.: 8:26-cv-02340

COSTCO WHOLESALE CORPORATION,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MIGUEL ZEPEDA, (hereinafter "Plaintiff" or "Mr. Zepeda"), by and through the undersigned counsel, hereby sues Defendant, COSTCO WHOLESALE CORPORATION, (hereinafter "Defendant" or "Costco") and alleges:

## JURISDICTION AND VENUE

1. This is an action for damages under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") and the Florida Civil Rights Act ("FCRA").

2. In this civil action Plaintiff has also brought claims against his former employer for monetary damages, declaratory relief, and for other equitable relief pursuant to the FCRA § 760.01, et al.

3. This Court has jurisdiction over the claims herein pursuant to 28 U.S.C §§ 1331 and 1343.

4.    The claims that arise under state law arise out of the same nexus of operative facts, and this Court therefore has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

5.    Venue is proper in the United States District Court, Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2) as the events or transactions out of which this claim arose occurred in Hillsborough County, which is located within the Middle District of Florida.

## PARTIES

6.    Plaintiff, MIGUEL ZEPEDA, is a Hispanic male who resides in Hillsborough County, Florida, located in the Middle District of Florida.

7.    Defendant, COSTCO WHOLESALE CORPORATION, is a For-Profit Corporation principally located at 999 Lake Drive, Issaquah, Washington 98027.

8.    COSTCO WHOLE CORPORATION operates a branch located at 8712 West Linebaugh Avenue #1262d, Tampa, Florida 33625, which is in the Middle District of Florida.

8.    Plaintiff has satisfied all conditions precedent to bringing this action.

## GENERAL ALLEGATIONS

9.    Miguel Zepeda is a Hispanic male of Mexican and Puerto Rican heritage.

10.    On February 27, 2007, Costco hired Mr. Zepeda as a Front-End Assistant.

11.     Over his nearly two-decade tenure, Mr. Zepeda earned multiple promotions and excelled in every position he held.

12.     Most recently, in 2025, Costco promoted Mr. Zepeda to Front-End Supervisor at its Linebaugh location in Tampa.

13.     Over the past several years, the management team at Costco Store #1262 has demonstrated a pattern and practice of treating Hispanic employees differently than non-Hispanic employees.

14.     In and around January 2026, Costco terminated Fernando Torga (Hispanic male) under the allegation that he was loitering in the parking lot and engaging in personal conversations with his coworkers, which factored into the decision to terminate his employment. However, White employees frequently engaged in this same conduct without facing discipline or termination.

15.     In and around April 2026, Costco terminated Jamie Buitron (Hispanic male) for clocking out a few minutes before his shift was scheduled to end. Again, this was a common practice among non-Hispanic employees who were not terminated for the same conduct.

16.     In and around February 2026, Costco terminated Miriam Reyes (Hispanic female with 10+ years of experience) for eating a piece of pepperoni topping by the pizza prep area. Non-Hispanic employees regularly ate small items without being terminated.

17.     In and around March 2026, Costco terminated Keyla Gordils (Hispanic female with 3 years of experience) because she allegedly had not been working with a

sense of urgency at the end of her shift. Ms. Gordils worked just as hard as her non-Hispanic counterparts but was held to a higher standard because she is Hispanic.

18.     Whereas Jeremy Higginbotham (Cashier – White male) has a documented history of cash register shortages. On or around March 18, 2026, Mr. Higginbotham caused an unexplained shortage of $207.66. If he had been Hispanic, he would have been terminated. However, because he was White, he was neither suspended nor terminated.

19.     Another example of a White individual who was treated more favorably than Hispanic employees is Helene Triola (Cashier – White female). Costco wrote Ms. Triola up several times for absenteeism and for not following directions. However, Costco did not terminate Ms. Triola.

20.     In and around March 2026, Aidan Hueholt (Front End Assistant – Non-Hispanic male) refused to follow directions, used profanity, and acted aggressively toward management. In fact, Mr. Hueholt got so frustrated that he punched a cabinet with enough force to create a very loud noise that alerted everyone in the immediate area. Despite Mr. Hueholt's unacceptable behavior, Costco did not terminate him from his position.

21.     The treatment Mr. Zepeda received stands in stark contrast to that afforded to non-Hispanic/White employees who engaged in serious misconduct at the same store.

22.     On or around January 8, 2025, Mr. Zepeda purchased an Echelon Stair Climber (exercise machine) from Costco for $399.99. This machine was for his wife to

use for exercise. On or around January 22, 2025, the stair climber's price dropped to $299.97, and Costco issued Mr. Zepeda a price adjustment of $100.02.

23.    Fourteen months later, on or around March 31, 2026, Mr. Zepeda returned the stair climber at his wife's request because she wasn't using it. In doing so, he received a refund of $399.99, the original purchase price before the price adjustment. The refund amount was $100.02 too high. This was Costco's mistake and Mr. Zepeda did not realize it was the wrong amount. At some point, someone at Costco's corporate level flagged this refund mistake.

24.    On or around April 7, 2026, Anthony Sardegna (General Manager – White male) met with Mr. Zepeda to discuss a directive from Costco Corporate.

25.    Mr. Sardegna accused Mr. Zepeda of intentionally obtaining a price adjustment on the stair climber and then returning it at its regular price to profit from the transaction.

26.    Mr. Zepeda denied the accusation and explained that he had not noticed the discrepancy at the time of the return.

27.    Mr. Zepeda also insisted that he wanted to repay Costco the difference as soon as he became aware of the error.

28.    Nevertheless, Mr. Sardegna informed Mr. Zepeda that Corporate had directed Mr. Sardegna to review Mr. Zepeda's item return and transaction history at the store.

29.    Mr. Sardegna then questioned Mr. Zepeda about two prior returns. First, Mr. Zepeda had returned his wife's engagement ring for store credit because it had a

loose diamond and they wanted to replace it with a ring without this defect. Second, Mr. Zepeda had returned diapers he had gotten as a gift which were the wrong size. Notably, Mr. Zepeda's managers had approved each of these returns.

30.     On or around April 23, 2026, Mr. Sardegna and Heiber Monroy (Assistant General Manager – Hispanic male) held a second meeting with Mr. Zepeda.

31.     Mr. Sardegna informed Mr. Zepeda that Corporate had placed him on unpaid suspension pending an investigation into the stair climber return.

32.     Mr. Zepeda again explained that he had not remembered that he had received a price drop adjustment and that the refund was too high at the time of the return and offered to repay Costco the difference of $100.02. Nevertheless, the suspension stood.

33.     While suspended, Mr. Zepeda emailed Justin Edmond (Regional Manager) to advise him of the situation and copied Wendy Davis (Senior VP) and Yoram Rubanenko (Executive VP). However, Mr. Edmond did nothing to address Mr. Zepeda's concerns.

34.     On April 30, 2026, Mr. Sardegna terminated Mr. Zepeda from his position under the pretext that Mr. Zepeda had been dishonest about the stair climber return when he accepted a refund of $399.99 instead of $299.97.

35.     Mr. Zepeda has incurred costs and attorney's fees in bringing this matter.

## COUNT I
## VIOLATION OF TITLE VII
## FOR DISCRIMINATION RESULTING IN
## ADVERSE EMPLOYMENT ACTION ON THE BASIS OF
## RACE, COLOR, AND NATIONAL ORIGIN

36.    Plaintiff, MIGUEL ZEPEDA, re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through thirty-five (35) as if set forth fully herein.

37.    Defendant is an "employer" within the meaning of Title VII.

38.    Mr. Zepeda was an "employee" of Defendant within the meaning of Title VII.

39.    Mr. Zepeda is a member of a protected class because of his race, color, and national origin, and therefore, is protected by Title VII.

40.    Mr. Zepeda was qualified to perform his job duties.

41.    Defendant treated its non-Hispanic employees more favorably than it treated its Hispanic employees by allowing the non-Hispanic employees to engage in serious misconduct in the workplace without suspending or terminating them and terminating the Hispanic employees for materially similar conduct.

42.    Defendant suspended and terminated Mr. Zepeda because of his race, color, and national origin.

43.    On or around April 23, 2026, Defendant suspended Mr. Zepeda without pay because of his race, color, and national origin.

44.    On April 30, 2026, Defendant terminated Mr. Zepeda because of his race, color, and national origin.

7

45.     Defendant's actions in suspending Mr. Zepeda, and terminating him because of his race, color, and national origin were reckless, willful, and malicious.

46.     As a direct and proximate result of Defendant's acts, Mr. Zepeda has suffered loss of wages, mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Zepeda has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Zepeda respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

A.     Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Zepeda;

B.     Back pay;

C.     Compensatory damages against Defendant;

D.     Prejudgment interest;

E.     Damages in compensation for the value of employment benefits he would have received but for the discriminatory acts and practices of Defendant;

F.     Attorney's fees and costs; and

G.     For such other relief as the Court deems just and equitable.

## COUNT II
## VIOLATION OF THE FCRA
## FOR DISCRIMINATION RESULTING IN
## ADVERSE EMPLOYMENT ACTION ON THE BASIS OF
## RACE, COLOR, AND NATIONAL ORIGIN

47.    Plaintiff, MIGUEL ZEPEDA, re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through thirty-five (35) as if set forth fully herein.

48.    Defendant is an "employer" within the meaning of the FCRA.

49.    Mr. Zepeda was an "employee" of Defendant within the meaning of the FCRA.

50.    Mr. Zepeda is a member of a protected class because of his race, color, and national origin, and therefore, is protected by the FCRA.

51.    Mr. Zepeda was qualified to perform his job duties.

52.    Defendant treated its non-Hispanic employees more favorably than it treated its Hispanic employees by allowing the non-Hispanic employees to engage in serious misconduct in the workplace without suspending or terminating them and terminating the Hispanic employees for materially similar conduct.

53.    Defendant suspended and terminated Mr. Zepeda because of his race, color, and national origin.

54.    On or around April 23, 2026, Defendant suspended Mr. Zepeda without pay because of his race, color, and national origin.

55.    On April 30, 2026, Defendant terminated Mr. Zepeda because of his race, color, and national origin.

56.    Defendant's actions in suspending Mr. Zepeda, and terminating him because of his race, color, and national origin were reckless, willful, and malicious.

57.    As a direct and proximate result of Defendant's acts, Mr. Zepeda has suffered loss of wages, mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Zepeda has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Zepeda respectfully invokes the remedial powers of this Court, as provided in the FCRA, and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Zepeda;

B.    Back pay;

C.    Compensatory damages against Defendant;

D.    Prejudgment interest;

E.    Damages in compensation for the value of employment benefits he would have received but for the discriminatory acts and practices of Defendant;

F.    Attorney's fees and costs; and

G.    For such other relief as the Court deems just and equitable.

**DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury.

Dated this 12th day of August, 2026.

*/s/ Gary L. Printy, Jr., Esq.*
Gary L. Printy, Jr.

Florida Bar No. 41956
**The Printy Law Firm**
5407 N Florida Avenue
Tampa, Florida 33604
(P): (813) 434-0649
(F): (813) 423-3722
garyjr@printylawfirm.com
e-service@printylawfirm.com
*Lead Counsel for Plaintiff*

11